[Civ. No. 66607. Second Dist., Div. Five. May 6, 1983.]

TOMMY WHITE et al., Plaintiffs and Appellants, v.
MORTGAGE FINANCE CORPORATION et al.,
Defendants and Respondents.

COUNSEL

Rose Mary E. Harmer for Plaintiffs and Appellants.

Alfred Fadel, David M. Rosman and Berger, Kahn, Shafton & Moss for Defendants and Respondents.

OPINION

HASTINGS, J.—Plaintiffs and appellants Tommy White and Cholette White (plaintiffs) had their lawsuit against Mortgage Finance Corporation (Mortgage

Finance), Hillcrest Builders (Hillcrest), Investor's National Security Company (National Security), William V. Harrison (Harrison), and Jonova Knickerbocker (Knickerbocker) (collectively respondents), dismissed by the trial court for failure to diligently prosecute the action (Code Civ. Proc., § 583, subd. (a)).[1] This appeal followed.

Plaintiffs filed a complaint to quiet title against respondents on July 16, 1976.[2] On July 2, 1981, on the day set for trial and 14 days before the 5-year period expired (Code Civ. Proc., § 583, subd. (b)), the trial court granted respondents' motion to dismiss the complaint. Plaintiffs claimed the court erred because they did diligently pursue the action and that any delay was caused by contingencies outside of their control. The facts are as follows:

On October 7, 1976, plaintiffs filed their first amended complaint (a demurrer had been sustained with leave to amend to the original action). By January 31, 1977, all respondents except Hillcrest had answered. Shortly thereafter, plaintiffs were unsuccessful in obtaining a restraining order in an unlawful detainer action filed against them by Harrison and Knickerbocker.

On May 9, 1977, Harrison and Knickerbocker filed an at-issue memorandum. On August 10, 1977, plaintiffs filed their at-issue memorandum.

In July 1977, plaintiffs served respondent Hillcrest and an answer was filed by August 3, 1977.

On June 29, 1979, plaintiffs' attorney died. In late September plaintiffs were able to obtain their file from the office of their deceased attorney and on October 2, 1979, they hired their second attorney.

On April 15, 1981, plaintiffs filed a motion to advance case for trial. The court granted the motion and set the trial for May 18, 1981. However, Harrison and Knickerbocker had not been served with the motion and they filed a motion to strike the May 18th trial date. The court granted the motion and struck the at-issue memorandum.

On June 3, 1981, plaintiffs filed a corrected at-issue memorandum and another motion to advance the case for trial. On June 8, 1981, respondents Harrison and Knickerbocker filed their motions to dismiss plaintiffs' action for lack

---

[1]Code of Civil Procedure section 583, subdivision (a) provides: "The court, in its discretion, on motion of a party or on its own motion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed. The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council."

[2]Plaintiffs' quiet title action also sought declaratory relief and damages for fraud.

of diligent prosecution, which motions set forth in detail why they were prejudiced by the long delay. On June 10, 1981, the date set for hearing plaintiffs' motion to advance case for trial all parties were present. The remaining respondents who had not filed 583, subdivision (a) motions indicated to the court that they intended to do so. The court gave them until June 23, 1981, to do so. Plaintiffs' motion to advance the case for trial was continued and was finally heard on June 19, 1981. At that time the court set the trial for July 2, 1981, without prejudice to the respondents because the hearing on their 583, subdivision (a) motions was set for June 23, 1981. On that date, the court deferred its ruling on the motions, all of which had been timely filed and continued the hearing to the date of trial. On the day of trial, the court granted all of respondents' motions to dismiss.

Some other background facts are enlightening. Plaintiffs claim they brought the quiet title action to save their home from being seized by reason of the fraud, inferior workmanship, and other antics of the various respondents. In brief, in 1973, they had hired Hillcrest to paint the outside of their home for $3,010.80. At that time they admitted signing a lien contract and a second trust deed on their home to secure the payment for the work. The painting was completed and plaintiffs commenced payments of $50.18 a month; however, after five months they claimed they stopped payments because the paint started to crack and peel. Plaintiffs attempted to contact Hillcrest, but it had moved, so they contacted National Security, who had been assigned the contract and deed of trust, and were told that if they continued payments on the contract there would be no foreclosure on the home. Plaintiffs commenced payments as requested, but a foreclosure sale, much to their surprise, was instigated and the property was sold to respondents Harrison and Knickerbocker. In order not to be ousted from their home, they subsequently signed a rental agreement with the new owners.

Plaintiffs sought a preliminary injunction to prevent Harrison and Knickerbocker from proceeding with an unlawful detainer action until their quiet title action was litigated.

The restraining order was denied because of the unopposed facts that were disclosed by the declarations of the respondents. The true story is that plaintiffs had also defaulted on the first deed of trust on their home. When Harrison and Knickerbocker purchased the home under the foreclosure sale, they had to pay $4,245.39 to National Security to retire the second trust deed and to pay the default payments due under the first trust deed. They also assumed the balance due on the first trust deed, which was $19,707.20. At the time of the hearing on the preliminary injunction, plaintiffs did not deny that they had defaulted on the first trust deed, had stopped payments to National Security after promising to continue them, and stopped payments under the rental agreement.

■ We now return to plaintiffs' principal arguments on appeal, namely, that it was the death of their attorney and their inability to effectuate early service on Hillcrest Builders that caused the litigation's delay. The facts disclose that the preliminary injunction was denied on March 22, 1977. Except for an at-issue memorandum filed by plaintiffs on August 10, 1977, nothing further was done to move the case to trial until May 14, 1980, when a new at-issue memorandum was filed. Plaintiffs' first attorney died on June 29, 1979, approximately two years and three months after the denial of the preliminary injunction. Plaintiffs' second attorney was substituted in on October 2, 1979, but except for a filed May 14, 1981, at-issue memorandum nothing further was done until April 15, 1981, when the motion was made to advance the case for trial. The period in which no action was taken by plaintiffs, except to file the two at-issue memoranda was from March 22, 1977, to April 15, 1981, a period of four years and one month.

The only period during that time which would seem to excuse inactivity was from June 29, 1979, when their first attorney died and October 2 of that year when they substituted in their second attorney. No explanation is given as to why their first attorney did nothing to advance the case to trial or perform discovery for two years and three months or why their second attorney was likewise inactive until May 1, 1981, more than one and a half years after being retained.

The facts above demonstrate that plaintiffs were evicted from their home not just because of the actions and antics of the various respondents, but primarily because they had defaulted on their first trust deed obligation as well as a rental agreement with Harrison and Knickerbocker. The latter two respondents had become owners of the home and paid off the default of the first trust deed and assumed the mortgage payments. Thus, the rental agreement that plaintiffs signed enabled Harrison and Knickerbocker to make payments on the first trust deed obligation which plaintiffs were no longer honoring. While these facts are not directly material to the issue before us, they are enlightening. The quiet title action did not, and could not under the facts, save plaintiffs' home. The property was lost to them because of their default on the first trust deed.

According to the record, the death of their attorney at most caused a five- to six-month hiatus which was quite negligible when viewed with the inactivity that extended over a four and one-half year period. Furthermore, the delay of service on Hillcrest Builders was insignificant because almost four years remained for diligently prosecuting the action after this respondent answered the complaint.

■ Code of Civil Procedure section 583, subdivision (a) makes it discretionary for the trial court to dismiss an action for want of prosecution if it is not

brought to trial within two years after being filed. (*House* v. *State of California* (1981) 119 Cal.App.3d 861, 880 [174 Cal.Rptr. 279].) Such discretion should not be disturbed on appeal unless it appears that there has been a miscarriage of justice and discretion is abused whenever the court exceeds the bounds of reason considering all of the circumstances then before the court. (*Innovest Inc.* v. *Bruckner* (1981) 122 Cal.App.3d 594, 598 [176 Cal.Rptr. 90]; *Corlet* v. *Gordon* (1980) 106 Cal.App.3d 1005, 1012 [165 Cal.Rptr. 524].) ■ Delay attributable to sickness or death of counsel or of the parties is not necessarily excusable. Each case must be decided on its own peculiar features and facts. (*Beswick* v. *Palo Verde Hospital Assn.* (1961) 188 Cal.App.2d 254, 261 [10 Cal.Rptr. 314].)

In addition to the facts cited above concerning lack of diligence to prosecute the case, the respondents' 583, subdivision (a) motions contained detailed reasons why they were prejudiced by plaintiffs' delay. The record here does not reveal that plaintiffs' failure to bring their case to trial was caused by their counsel's death or delay in service on Hillcrest. The trial court's conclusion that the delay was inexcusable is justified by the facts and we cannot say as a matter of law that the court abused its discretion.

■ One other argument by plaintiffs requires a response. It is their contention that once the court had set the case for trial by granting their motion it was precluded from granting respondents' 583, subdivision (a) motions on the date of trial. This argument fails because it is clear that the court reserved jurisdiction to consider respondents' motions when it set a hearing on the issue for June 23, 1981. When the court granted plaintiffs' motion for an early setting and set the case for trial on July 2, 1981, it specifically did so without prejudice because of the June 23 hearing. Merely continuing that hearing to date of trial did not preclude the court from considering the motions on that day. The July 2, 1981, trial date was contingent on the court's determination of the 583, subdivision (a) motions.

The judgments of dismissal are affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.